OPINION *Page 2 
{¶ 1} Appellant, T.P., appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating her parental rights and awarding permanent custody of her four children, T.P., A.P., E.P., and M.P. to Franklin County Children Services ("FCCS").
 {¶ 2} On June 8, 2005, FCCS filed a complaint alleging that T.P., A.P., and E.P. were neglected and dependent. The trial court adjudicated them dependent and neglected, and the children were placed in the temporary custody of FCCS on July 19, 2005. Shortly thereafter, on September 29, 2005, FCCS filed a complaint regarding M.P., the infant sibling of these three children. M.P. was adjudicated dependent, and on December 21, 2005, the trial court placed M.P. in the temporary custody of FCCS.
 {¶ 3} On November 20, 2006, FCCS filed motions for permanent custody of the four children. The motions alleged the children could not or should not be placed with appellant within a reasonable time, that the children had been abandoned, and that the children had been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period. The guardian ad litem, Rebecca Steele ("GAL"), filed her report on July 6, 2007. Hearings on the motion commenced on January 28, 2008. At the beginning of the hearing, appellant's counsel requested a continuance because appellant was not present, and she did not know where appellant was. The trial court overruled the motion for continuance and the matter proceeded. FCCS caseworker, Melissa Hoffman, and the GAL testified at the hearings.[1] On February 8, 2008, the trial court granted *Page 3 
FCCS's motion for permanent custody of all four children. This appeal followed, and appellant brings two assignments of error for our review:
 I. The trial court abused its discretion and violated the Due Process rights of Appellant by overruling trial counsel's motion for a continuance.
 II. The trial court's decision terminating Appellant's parental rights was not supported by clear and convincing evidence.
 {¶ 4} In her first assignment of error, appellant contends the trial court abused its discretion and violated her due process rights when it denied her motion for a continuance made to the trial court on the day of the hearing. An appellate court will not reverse a trial court's decision denying a motion for continuance unless the trial court abuses its discretion. In the Matter of B.G.W., Franklin App. No. 08AP-181,2008-Ohio-3693, at ¶ 23. An abuse of discretion connotes more than an error of law or judgment, but implies that the judgment can be characterized as unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. In considering whether a trial court abused its discretion in denying a motion for continuance, we consider the length of the requested delay, prior continuances requested and received, the presence or absence of legitimate reasons for the requested delay, appellant's participation or contribution to the circumstances giving rise to the request for a continuance, and any other relevant factors. Id., citing State v.Unger (1981), 67 Ohio St.2d 65, 67-68.
 {¶ 5} In the present case, this matter had been continued nine times, four of which were at appellant's request. Additionally, the request for continuance was made the same day of trial in contravention of Loc. R. 2 of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which provides that continuances *Page 4 
will not be granted the day of trial without a showing of good cause. Counsel's reason for the continuance was appellant's absence, but counsel was unable to give a reason as to why appellant was not present at the hearing. Appellant made no apparent attempts to contact the court or her attorney to explain her whereabouts. Counsel stated she last spoke with appellant approximately two months prior, "at the last hearing" which was on November 28, 2007. (Tr. at 5.) Further, the trial court noted appellant signed a continuance entry reflecting the permanent custody hearing was going to be held at 1:30 p.m. on June 28, 2008, and clearly had knowledge of the date of the final hearing.
 {¶ 6} Under these circumstances, we do not find the trial court abused its discretion in denying counsel's motion for a continuance. See In reI.R., Franklin App. No. 04AP-1296, 2005-Ohio-6622 (no abuse of discretion in denying the appellant's motion for a continuance where it was made on the day of the hearing with no explanation of the client's whereabouts); In re Harris (Mar. 20, 2001), Franklin App. No. 00AP-987 (finding no abuse of discretion in denying continuance request because request was made in violation of local rule and counsel offered no reason for his client's absence); In re Young (Dec. 21, 1999), Franklin App. No. 99AP-489 (finding no abuse of discretion in denial of continuance when request was made on the day of trial and there was no reason given as to why movant was not able to attend the hearing). Moreover, a continuance would not likely have changed the outcome of the case. As will be discussed in the disposition of appellant's second assignment of error, a continuance would not have remedied the many ways appellant failed to comply with even the basics of the case plan filed by FCCS. Accordingly, we overrule appellant's first assignment of error. *Page 5 
 {¶ 7} In her second assignment of error, appellant contends the trial court's decision terminating her parental rights was not supported by clear and convincing evidence.
 {¶ 8} It is well-recognized that the right to raise a child is a basic and essential civil right. In re Hayes (1997), 79 Ohio St.3d 46. A parent must be given every procedural and substantive protection the law allows prior to parental rights being terminated. Id. Due process includes a hearing upon adequate notice, assistance of counsel, and under most circumstances, the right to be present at the hearing. In reThompson (Apr. 26, 2001), Franklin App. No. 00AP-1358.
 {¶ 9} A court may grant permanent custody of a child to an agency if it finds by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that any of the factors in R.C. 2151.414(B)(1) apply. In re O.J., Franklin App. No. 05AP-810, 2006-Ohio-286, citing In re Gomer, Wyandot App. No. 16-03-19,2004-Ohio-1723. Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.In re Abram, Franklin App. No. 04AP-220, 2004-Ohio-5435. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. Id.
 {¶ 10} A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Andy-Jones, Franklin App. No. 03AP-1167,2004-Ohio-3312. "Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." In re O.J., at ¶ 11, citing In re Brown, Franklin App. No. 03AP-969, 2004-Ohio-3314. Further, *Page 6 
in determining whether a judgment is against the manifest weight of the evidence, the reviewing court is guided by the presumption that the findings of the trial court are correct. In re Brofford (1992),83 Ohio App.3d 869, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80; In re Abrams, supra.
 {¶ 11} Appellant does not contest the trial court's determination that one of the four factors enumerated in R.C. 2151.414(B)(1) applies, but for purposes of completeness we will briefly address this issue. R.C. 2151.414(B) provides in pertinent part:
 (1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413
[2151.41.3] of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody. *Page 7 
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 [2151.41.3] of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.
 {¶ 12} Here, it is undisputed the children had been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period as is required in R.C. 2151.414(B)(1)(d). Thus, the issue before the trial court was whether permanent placement was in the children's best interest. In re A.L., Franklin App. No. 07AP-638, 2008-Ohio-800. In assessing the best interest of the child, the court is to consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions (E)(7) to (11) of R.C. 2151.414
apply in relation to the parents and child. As to the fifth factor listed above, the factors set forth in R.C. 2151.414(E)(7) through (11) include: (1) whether the parents have been convicted of or pled guilty to various crimes; (2) whether medical treatment or food has been withheld from the child; (3) whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse; (4) whether the parent has abandoned the child; and (5) *Page 8 
whether the parent has had parental rights terminated with respect to a sibling of the child.
 {¶ 13} Here, the court determined that FCCS met its burden to show that it is in the children's best interest to grant permanent custody to FCCS. In support of her argument that FCCS did not meet its burden, appellant does not take issue with the best interest factors per se but, rather, points to evidence that she utilized some case plan services and completed mental health and drug and alcohol assessments. This, according to appellant, establishes she is capable and willing to complete the necessary steps to remedy the conditions resulting in the removal of her children. Appellant also states the evidence shows she did not abandon her children as she attended 75 percent of her scheduled visits with the children and made arrangements with the foster mother to make up for missed visits. Appellant also attended some of the children's doctor appointments. Additionally, appellant asserts she has an "exceptionally strong bond" with T.P and E.P., and T.P. has expressed a preference to stay with appellant. (Appellant's brief, at 8.)
 {¶ 14} At the time of the hearing, the ages of T.P., A.P., E.P., and M.P. were eight, five, three, and two, respectively. T.P., A.P., and E.P. had been in FCCS's custody for 30 months, and M.P. had been in FCCS's custody for 26 months. According to Ms. Hoffman, FCCS became involved with this family upon the birth of A.P., at which time appellant was homeless and without any income or support.
 {¶ 15} The most recent case opening that resulted in these proceedings occurred when FCCS received complaints of T.P. "going to school starving," the home being unclean, and appellant staying elsewhere while T.P. was watching the other children. (Tr. at 14.) There were allegations that T.P., who was five years old at the time, was cooking *Page 9 
for the other children and taking care of them. Additionally, T.P. was reported as having missed many days of school and having behavioral issues.
 {¶ 16} Upon FCCS's involvement, a case plan was initiated with the goal of reunification. The case plan required appellant to meet the children's basic needs, to complete parenting classes, to attend a minimum of one-hour weekly visits, to complete drug and alcohol assessments, to complete a mental health assessment, as well as obtain and maintain stable housing and employment and to have food available in the house at all times. The FCCS caseworker reviewed the case plan with appellant, made referrals to assist appellant in meeting the case plan requirements, and provided bus passes for visitation, to complete drug screens, and to attend counseling programs.
 {¶ 17} There were only a few parts of the case plan that appellant completed, namely, a mental and drug and alcohol assessment shortly after FCCS received custody of the children and parenting classes at St. Stephens in 2005. Though appellant completed parenting classes, her psychological evaluation recommended that she complete them again, but she did not. The psychological evaluation also recommended appellant undergo individual counseling and a psychiatric evaluation, but appellant failed to complete either recommended activity. Appellant was "asked to attend a few medical appointments for the children and she did not go to all of those that she was asked." (Tr. at 18.) Appellant did not attend "25-30 percent" of the one-hour weekly visits with the children. Id. at 21. Appellant did not obtain housing throughout the proceedings, nor did she establish consistent employment. Appellant had approximately seven listed addresses during these proceedings, had been in homeless shelters, and was sometimes unable to locate. Though appellant gave Ms. Hoffman the name of two maternal aunts, neither expressed an interest in taking the children. *Page 10 
 {¶ 18} T.P. has been diagnosed with ADHD and has been assigned to a smaller classroom for children with learning problems. E.P. has been evaluated by the special needs preschool through Columbus Public Schools where she has started school. M.P. is "globally delayed," as he is delayed in every area of development and receives "Help Me Grow services, MRDD services home based, PT, OT and speech therapy." (Tr. at 23.) Ms. Hoffman who viewed the children with appellant at some of the visits testified that only T.P. referred to appellant as "mom." In Ms. Hoffman's opinion, the children are very bonded to each other and are adoptable, and the foster mom is willing to adopt all four children if the opportunity permits.
 {¶ 19} The GAL testified that M.P. has "very, very little verbal ability" due to his severe delays. Id. at 39. Though two years old, M.P. is unable to walk or crawl. Therefore, M.P. is unable to express his desire regarding placement. E.P., though "able to verbalize a little" did not have the ability to express her wishes regarding placement. A.P. said she wanted to remain with the foster mom and not return to appellant. T.P. said "he did want to reunify with mother, but also said he was fine with staying in the foster home, if the other children were staying there too." Id. According to the GAL, the children have a strong sibling bond and are bonded with their foster mother. Both Ms. Hoffman and the GAL recommended that permanent custody be granted to FCCS on all the children.
 {¶ 20} In the present case, the trial court's decision indicates it considered the best interest factors. Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in the children's best interest. The trial court concluded the children's need for legally secure placement could not be achieved without awarding permanent custody to FCCS. The trial court further *Page 11 
found that while A.P., E.P., and M.P. have no connection with appellant, and T.P. has only a moderate connection with appellant, the children are very bonded to each other and the foster caregivers. Further, though T.P. expressed a preference to live with appellant, he also wants to stay with his siblings.
 {¶ 21} The testimony of Ms. Hoffman and the GAL supports the trial court's determination. The record makes clear that appellant failed to complete the majority of the case plan provided by FCCS and failed to meet even the basic needs of the children. Appellant did not obtain housing, nor remedy any of the problems which caused the children to be removed from her care. Additionally, appellant did not establish consistent employment. Moreover, appellant did not utilize the many resources and referrals made available to her to assist her in remedying the issues that resulted in her children being taken from her care.
 {¶ 22} Because the trial court's judgment is supported by the evidence in the record, we overrule appellant's second assignment of error.
 {¶ 23} For the foregoing reasons, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch is hereby affirmed.
Judgment affirmed.
SADLER and TYACK, JJ., concur.
[1] None of the putative fathers took part in any of the proceedings. *Page 1