[Cite as *In re T.C.*, 2016-Ohio-7631.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re T.C., T.H.

Court of Appeals No. L-16-1154

Trial Court No. JC 14243697

**DECISION AND JUDGMENT**

Decided: November 4, 2016

* * * * *

Stephen D. Long, for appellant.

Bradley W. King, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common

Pleas, Juvenile Division, which awarded permanent custody of the minor children T.C.

and T.H. to appellee, Lucas County Children Services ("LCCS"), thereby terminating mother-appellant's, T.H., parental rights.[1] For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} On October 21, 2014, LCCS filed a complaint in dependency and neglect, and a motion for a shelter care hearing, in which it alleged that T.C. complained to school personnel that he was exhausted from walking all weekend while carrying his belongings because the family had been kicked out of where they were living. The complaint also alleged that appellant and the children were moving from place to place; that appellant has a history of substance use; that appellant has left the children with family and friends for long stretches of time; that LCCS has been involved with appellant since 1989; and that appellant has eight older children and she has lost custody of several of those children. On the same day, a shelter care hearing was held at which the children were placed in the temporary custody of LCCS.

{¶ 3} At the adjudication and disposition hearing held on December 2, 2014, mother agreed to the allegations in the complaint as written, and consented to a finding that the children were dependent. Temporary custody of the children was awarded to LCCS.

{¶ 4} An amended case plan was provided with the goal of reunification. As part of the case plan, appellant was to complete a diagnostic assessment for emotional/mental

---

[1] The parental rights of father, T.H., were also terminated by the trial court. Father did not appear at the hearing, and has not appealed the trial court's decision, thus we will not discuss the court's findings relative to him.

2.

health counseling to address concerns that her emotional/mental health affected her ability to parent and placed the children at risk. Appellant also was to complete a drug and alcohol assessment and submit to random drug screens to address concerns that she was abusing prescription medications. Third, to address concerns that appellant had no stable housing and was essentially homeless, appellant was to obtain safe and stable housing for herself and the children, pay her rent on time, and maintain her housing in a safe and sanitary manner. Fourth, appellant was to attend and actively participate in domestic violence counseling to address concerns of domestic violence dating as far back as 2009. Finally, appellant was to engage in counseling to address the instability she has experienced.

{¶ 5} On August 31, 2015, LCCS moved for an extension of temporary custody, which, after a hearing, the trial court granted on October 13, 2015. On January 21, 2016, LCCS filed its motion for permanent custody. The matter proceeded to a trial on the motion on May 23, 2016.

{¶ 6} At the trial, LCCS called Linda Rosenbloom, the ongoing caseworker, as its only witness.

{¶ 7} Rosenbloom testified to concerns regarding appellant's mental health and substance abuse. She testified that appellant was a recovering alcoholic, and that although appellant stated that she has been clean and sober for years, there were reports from various people that appellant was abusing pain medications, i.e., percocets, and there were also concerns that appellant was exhibiting drug seeking behavior.

3.

Rosenbloom testified that she has observed some irregularities in appellant's behavior in that appellant has reported having to use a walker, but Rosenbloom has observed her run out of the courtroom "quite quickly and looked fully capable of doing it." Relative to the pain management, Rosenbloom recalls seeing a prescription for something in the past, but does not remember what medication was prescribed. Additionally, Rosenbloom testified that appellant admits to using marijuana. Notably, appellant has missed several drug screens.

{¶ 8} Rosenbloom also testified regarding domestic violence concerns. She stated that appellant had been a victim of domestic violence dating back to 2009, and also to her childhood. Appellant was referred to Project Genesis for domestic violence services, and completed the course. However, instead of taking the typical three months to complete the course, it took appellant six to nine months to complete. Rosenbloom posited that the delay was due, in part, to appellant's work schedule. Appellant was also referred for trauma therapy, but did not complete it. The reason she did not complete the therapy was because the therapy center asked appellant to sign some paperwork, and when they insisted that she sign it after she stated that she could not due to her disability, appellant fell to the ground in pain, necessitating a call for an ambulance. Appellant then threatened to sue the therapy center.

{¶ 9} Turning to appellant's work history and financial situation, Rosenbloom testified that appellant had no current income whatsoever, and that her older son is paying

4.

her rent of $25 a month. She stated on cross-examination that appellant has lived in her current residence for the past nine months. However, Rosenbloom testified that appellant has said that she has no money for food, and struggles to get food for herself. Furthermore, Rosenbloom testified on cross-examination that the older son would not stipulate that he would help pay a certain amount every month to help appellant, and the other family members have expressed that they are tired and do not want to help raise appellant's children anymore.

{¶ 10} Rosenbloom also stated that during her involvement, appellant has had two jobs, but neither lasted long. Rosenbloom conveyed that appellant has stated her lack of employment is due to a disability stemming from a work injury she suffered in 2006. Beginning in July 2015, after her last job ended, appellant claimed that she had hired an attorney out of Cleveland to pursue some type of workers' compensation or disability benefits. Notably, she claimed that she hired a Cleveland attorney because no Toledo attorney would take her case. Rosenbloom testified that appellant has been referencing a "huge settlement"—three or four million dollars—that is going to be reached soon, but when Rosenbloom spoke with appellant's attorneys she found no correlation between what appellant was saying and what the attorneys said. Rosenbloom further testified on cross-examination that appellant was denied workers' compensation or disability payments in 2016.

{¶ 11} Rosenbloom also testified to a staffing meeting that occurred six months before the trial where they were going to discuss a permanency plan for the children.

5.

Several members of appellant's family were at the meeting, during which appellant became agitated and stormed out of the meeting.

{¶ 12} Finally, regarding the children, Rosenbloom testified that they are currently in foster care where they are enrolled in lots of extracurricular activities and are doing well. Rosenbloom also stated that appellant has made most of her visits with the children. If permanent custody were awarded to the agency, Rosenbloom testified that the plan was that a maternal aunt would adopt the children. The maternal aunt has specified that she has no interest in only getting legal custody. Rosenbloom testified that her opinion is that permanent custody is in the best interest of the children because although the children love their mother, appellant cannot offer any stability or consistency and the children are exhausted.

{¶ 13} Appellant testified next on her own behalf. Appellant testified that in April 2016, she won an appeal in the Industrial Commission, and that her workers' compensation case is going back "to reactivate me on serious -- on degenerative [disk disease in my lumbar]." She stated that she is in chronic pain, but that doctors in Toledo have lied to her and told her nothing was wrong for the past ten years. She further stated that she has not received a prescription for pain medication since November 2015 when the doctor refused to treat her because she had on too much perfume.

{¶ 14} Appellant also testified that she has completed every part of her case plan, except for maintaining a stable income, even though her caseworker offered her no

assistance, not even bus tokens or food.  Appellant asked the court to give her another month to receive her ten years of back-pay stemming from her disability claim.

{¶ 15} Finally, the guardian ad litem, Fanny Effler, testified.  Effler testified that she believes the only way the children will have stability in their lives is through an award of permanent custody to the agency.  She noted that the other family members would not accept legal custody because they did not want to deal with appellant.  Effler also testified that she does not believe it is true that appellant is going to be the recipient of a monetary settlement.  She explained that appellant had sought work throughout the case until all of a sudden in July 2015 appellant started talking about a settlement from an injury that occurred in 2006.  Effler stated that everyone has been waiting for that settlement for the past 11 months, but it never came, and she does not think the children can wait any longer.

{¶ 16} Following the presentation of testimony, the trial court took the matter under advisement, and on May 25, 2016, orally conveyed its ruling awarding permanent custody of the children to LCCS.  The trial court's findings subsequently were memorialized in a journal entry on June 13, 2016.

## II.  Assignments of Error

{¶ 17} Appellant has timely appealed the trial court's judgment, and now asserts three assignments of error on appeal:

7.

1.  The trial court's decision to terminate parental rights and responsibilities was not supported by clear and convincing evidence and was against the manifest weight of the evidence.

2.  The trial court's decision to terminate the parental rights of mother violates the equal protection clauses of the United States and Ohio constitutions and substantive due process considerations where the award of permanent custody was based upon mother's poverty rather than her actions or inactions.

3.  Mother was denied the effective assistance of counsel.

### III.  Analysis

{¶ 18} Appellant's first two assignments of error are interrelated, thus we will address them together.

{¶ 19} In order to terminate parental rights and award permanent custody of a child to a public services agency under R.C. 2151.414, the juvenile court must find, by clear and convincing evidence, two things:  (1) that one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(d) apply, and (2) that permanent custody is in the best interests of the child.  R.C. 2151.414(B)(1).  Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.  *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph

three of the syllabus. The clear and convincing standard requires more than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. *Id.*

{¶ 20} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *Id.*, citing *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 21} R.C. 2151.414(B)(1)(a) provides that a trial court may grant permanent custody of a child to the agency if it finds that, in addition to the placement being in the best interest of the child,

> The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either

9.

of the child's parents within a reasonable time or should not be placed with

the child's parents.

R.C. 2151.414(E) requires a trial court to find that a child cannot be placed with either of

the child's parents within a reasonable time or should not be placed with either parent if

any of sixteen factors are met. Here, the trial court found that R.C. 2151.414(E)(1) and

(4) applied. Those sections provide:

(1) Following the placement of the child outside the child's home

and notwithstanding reasonable case planning and diligent efforts by the

agency to assist the parents to remedy the problems that initially caused the

child to be placed outside the home, the parent has failed continuously and

repeatedly to substantially remedy the conditions causing the child to be

placed outside the child's home. In determining whether the parents have

substantially remedied those conditions, the court shall consider parental

utilization of medical, psychiatric, psychological, and other social and

rehabilitative services and material resources that were made available to

the parents for the purpose of changing parental conduct to allow them to

resume and maintain parental duties.

* * *

(4) The parent has demonstrated a lack of commitment toward the

child by failing to regularly support, visit, or communicate with the child

when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

{¶ 22} In reaching its findings, the trial court reasoned that despite being involved in some case plan services, appellant has not demonstrated an ability to provide any stability for the children, noting that appellant has no current income, has not maintained employment or shown that she has a legitimate claim for worker's compensation, has trouble providing basic necessities even for herself, and has repeatedly shown that she is incapable of caring for the children's needs.

{¶ 23} In her brief, appellant argues that the trial court essentially terminated her parental rights because she was poor. Appellant notes that the children were initially removed because she was homeless. However, at the time of the hearing, appellant had resided at the same location for the previous nine months, thereby resolving the homelessness issue. Furthermore, appellant argues that there is no "lack of commitment" as evidenced by her visits to the children and the fact that the children want to be with her. Thus, appellant concludes the sole basis for terminating parental rights was that she had no income.

{¶ 24} Appellant cites *In re K.*, 8th Dist. Cuyahoga No. 83410, 2004-Ohio-4629, ¶ 40, in which the Eighth District stated, "Poverty in and of itself is not a crime. Nor is it a basis for permanently removing children from their parents." Appellant contends that she worked until a degenerative injury from 2006 prevented her from finding gainful employment. She then sought to obtain a steady source of income either through

11.

workers' compensation or social security. Appellant asserts that the evidence at trial shows that while she is actively seeking governmental assistance, she has not yet been approved. Therefore, appellant concludes that the trial court's decision to terminate parental rights was against the manifest weight of the evidence and violated equal protection.

{¶ 25} Upon our review of the record, we disagree. Notably, in *In re K.*, the Eighth District continued, "When an impoverished parent's actions, however, result in parental neglect, our society would be remiss if it did not intervene for the sake of the child's welfare. Appellant had more than two years to remedy the situation in which she found herself. Her children should not be penalized because she did not do so." *Id.*

{¶ 26} Here, appellant's ninth and tenth children, the previous eight of whom appellant no longer had custody of,[2] were removed from appellant's care because they were homeless. Early in LCCS' intervention, appellant had a series of jobs, but was not able to maintain consistent employment. Suddenly, in July 2015, nine months after the children were removed, appellant began referencing a settlement from an injury nearly 10 years ago. Notably, the trial court found appellant's testimony to be un-credible, stating, "Based on [appellant's] demeanor, testimony, and answers to questions, the Court has concerns that [appellant] does not have the capacity to understand the circumstances of her pain, maintenance, and condition and whether she in fact has an appropriate worker's compensation claim." Additionally, Rosenbloom testified that information from

---

[2] One of appellant's children is deceased.

12.

appellant's attorneys in Cleveland was inconsistent with appellant's view of whether she was entitled to a settlement.

{¶ 27} Thus, the evidence demonstrates that in the 21 months since the children were removed, appellant has not changed her circumstances; appellant has no income, has difficulty providing food for herself, is relying on her older son to pay her rent— which he will not commit to continuing to do—has not maintained employment, and has not demonstrated any realistic possibility of receiving a financial settlement from her previous injury. Furthermore, there is nothing in the record to suggest that appellant's situation will improve in the near future. Therefore, we hold that the trial court's findings under R.C. 2151.414(E)(1) and (4) are not against the manifest weight of the evidence and are not in violation of the equal protection clauses of the United States and Ohio constitutions.

{¶ 28} Accordingly, appellant's first and second assignments of error are not well-taken.

{¶ 29} In her third assignment of error, appellant argues that she received ineffective assistance of counsel based on counsel's failure to understand and examine appellant's workers' compensation or social security claims.

{¶ 30} The test for ineffective assistance of counsel in a parental rights termination proceeding is the same as that used in criminal cases. *Jones v. Lucas County Children Servs. Bd.*, 46 Ohio App.3d 85, 86, 546 N.E.2d 471 (6th Dist.1988). To prevail on a

13.

claim of ineffective assistance, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 687-688, 694. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697.

{¶ 31} Here, appellant has failed to demonstrate any reasonable probability that, but for counsel's failings, the result of the proceedings would have been different. Appellant argues that counsel failed to examine the viability of appellant's workers' compensation or social security claims. However, the record contains no evidence that those claims were, in fact, viable. Instead, the trial court found appellant's testimony to be un-credible, Rosenbloom testified that the information from appellant's Cleveland attorneys was inconsistent with appellant's belief, and although appellant implied that a settlement was imminent beginning in July 2015, as of May 2016 nothing had materialized. Therefore, we hold that appellant has failed to demonstrate that she received the ineffective assistance of counsel.

{¶ 32} Accordingly, appellant's third assignment of error is not well-taken.

14.

## IV. Conclusion

**{¶ 33}** For the foregoing reasons, we find that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

Stephen A. Yarbrough, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE